THE STATE ex rel. LUSK et al., Receivers of St. Louis
& San Francisco Railroad Company, v. JAMES
ELLISON et al., Judges of Kansas City
Court of Appeals.

In Banc, July 12, 1917.

1. **NEGLIGENCE: Duty of Engineer to Trackmen.** In determining the relative duties of engineers of switch trains and track workers to each other the Missouri decisions hold: (1) that trackmen are under a duty to look out for their own safety; (2) that an engineer is not required to keep a lookout for trackmen in the ordinary operation of trains; (3) that the engineer has the right to assume that trackmen, although in a place of danger, will, in the exercise of their duty to protect themselves, remove themselves from such place of danger before the train reaches them; and (4) that it is only after the engineer discovers that the trackman is oblivious to his danger and is not going to retire to a safe place that the engineer is obliged to take steps to protect such trackman.

2. ———: ———: **Right to Clear Track: Proximate Cause.** Plaintiff and his crew were working on what was known as the Middle Yard Lead in switch yards. Having replaced a broken rail and raised the joints with jack screws, they were engaged in filling up the low places with cinders. While the track was thus raised it was not safe to run trains or engines over them. When a certain switch crew, with their engine and cars, attempted to pass over the raised track, plaintff warned and signaled them, and they waited until the jacks were removed and then proceeded. The same thing occurred a second time. When the switch crew started to pass over the track a third time, the plaintiff says that the engineer was looking towards the back end of his train, and not towards the front end, and that, in attempting to signal the engineer, he left his track, and as he went to one side thereof he was struck by a car coming from the opposite direction on what was called the East Yard Lead, whose tracks were eight feet from the Middle Yard Lead. *Held*, that the engineer was not entitled to a clear track on the Middle Yard Lead, but his negligent failure to be on the lookout for plaintiff's signal cannot be held to have been the proximate cause of plaintiff's injuries.

3. ———: ———: **Proximate Cause: Anticipating Injury to Trackman.** Where the trackman, in an attempt to signal an engineer whose engine was about to pass over the track and who was not entitled to a clear track, stepped from a place of danger on the track to signal the engineer, and in doing so got so close to another track

that he was struck by a car rightfully moving thereon, the negligent failure of the engineer to keep a proper lookout for the trackman's safety was not the proximate cause of his injury, for it was the duty of the trackman to be on the lookout for moving cars on the adjoining track, and the injury to the trackman, in the manner in which it occurred, was not one reasonably to be anticipated by the engineer; and the Court of Appeals, in holding that the engineer's negligence was the proximate cause of the trackman's injury, contravened the previous rulings of the Supreme Court in American Brewing Association v. Talbot, 141 Mo. l. c. 683 et seq., and similar cases.

4. **CERTIORARI: Conflict in Principles of Law.** It is sufficient to uphold a writ of *certiorari* to a Court of Appeals on the ground of failure to follow the last previous rulings of the Supreme Court, that the holding of said court, on a given state of facts, contravened the well established rulings in law or equity of the Supreme Court.

## Certiorari.

RECORD QUASHED.

*W. F. Evans, Cowherd, Ingraham & Durham* and *Hale Houts* for relators.

(1) The decision of the Court of Appeals in holding that the relators owed plaintiff, a trackman, the duty to watch out for his safety upon the tracks and particularly upon the east yard lead, is in conflict with all previous decisions of this court defining the duty owed by railroad companies to trackmen, and more particularly with the decision of this court in the cases of Cahill v. Railroad, 205 Mo. 393; Degonia v. Railroad, 224 Mo. 564; Nivert v. Railroad, 232 Mo. 626; Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257. (2) The decision of the Court of Appeals in holding that the alleged failure of the engineer to keep a lookout for plaintiff was the proximate cause of his being injured on the other track by a box car coming in the opposite direction is in conflict with all of the previous decisions of this court on the question of proximate cause and more particularly with the decisions in these cases: Ralyea v. Railroad, 112 Mo. 86; Butz v. Cavanaugh, 137 Mo. 503; Coin v. Lounge Co., 222 Mo. 488; Brewing Co. v. Talbot, 141

Mo. 674. (3) The decision of the Court of Appeals in refusing to hold that plaintiff's own negligence was the sole cause of his injury is in conflict with the last previous decision of this court in the case of Coin v. Lounge Co., 222 Mo. 488.

*Calvin & Rea* and *George C. Coggburn* for respondents.

(1) The recovery had, and so far upheld, in this cause, is predicated upon the theory that the negligent failure of the engineer to observe and obey the signal being given him by respondent, became, and was, the proximate cause of respondent's injury; and the cases cited by relators, holding that a railroad company owes no duty to warn trackmen of the approach of its trains, are not applicable; and, moreover, there is no conflict as between the decisions as rendered in those cases and the decision as rendered in the instant case. (2) The Kansas City Court of Appeals, in rendering its decision in this cause, was without the guidance of any decision of this court, inasmuch as this court has never dealt with the precise question as here involved. And this court will not, in this proceeding, quash the decision as rendered by the Kansas City Court of Appeals, seeing that it is not a decision rendered in defiance of the supremacy of this court, and that the Kansas City Court of Appeals becomes, and is, a court of last resort in cases within its appellate jurisdiction. State ex rel. v. Moore, 84 Mo. App. 11; State ex rel. v. Valliant, 123 Mo. 524; State ex rel. v. Walbridge, 116 Mo. 656; Summerrow v. Johnson, 56 Ark. 85; Cushing v. Gay, 23 Me. 9. (3) This court will not deal with the question as to whether or not the negligent failure of the engineer to heed the warning signal, became, and was, the proximate cause of respondent's being injured, so long as the decision under consideration is found not to be in conflict with the rulings of this court upon a similar or identical state of facts as the instant case presents. Cases supra. (4) Under all the testi-

271 Mo.—30

mony adduced upon the trial of this cause, it was a proper question for the jury to determine whether or not the negligent failure of the engineer to heed the warning signal became, and was, the proximate cause of the injury in question. Employers' Liability Act (Act April 28, 1908), c. 149, U. S. Comp. Supp. 1911, p. 1323; Witham v. Delano, 184 Mo. App. 677; Hardwick v. Railroad, 181 Mo. App. 156; Cent. Dig. (Master & Servant), 671; Dec. Dig. (Master & Servant), sec. 228; Thornton's Federal Employers' Liability Act (3 Ed.), sec. 72; Penn Ry. Co. v. Cole, 214 Fed. 948; Ellis v. Railroad, 155 Ky. 745; Railroad v. Wene, 202 Fed. 887; Toby v. Railroad, 33 L. R. A. (Iowa) 501; Railroad v. Wignan, 56 Ill. 489; Railroad v. Neibel, 214 Fed. 953; Knapp v. Railroad, 153 N. W. (Minn.) 848; Donselliod v. Railroad, 94 Atl. (N. J.) 804; McMarshall v. Railroad, 80 Iowa, 757. (5) It was also a proper question for the jury to determine whether or not respondent's injury was directly due to relators' negligence; whether or not respondent was guilty of contributory negligence; and, to consider and compare the negligence and contributory negligence of the respective parties, as touching liability for the injury which respondent sustained. Hardwick v. Railroad, 181 Mo. 677; Schlemmer v. Railroad, 205 U. S. 1; Penkey v. Railroad, 180 Mo. App. 202; Ellis v. Railroad, 155 Ky. 745; Louisville v. Wene, 202 Fed. 887; Railroad v. Cole, 214 Fed. 948; Railroad v. Beauregard, 36 Sup. Ct. Rep. 126. (6) In view of all the facts as disclosed by this record, and under any reasonable view which may be taken with reference thereto, the question of appellants' negligence and respondent's contributory negligence, as well as all other questions upon the material issues in this cause, were properly submitted to the jury, and under appropriate instructions; and, no error materially affecting the merits of this action appearing, the finding thereupon should remain conclusive. Sec. 2082, R. S. 1909; Barkley v. Association, 153 Mo. 300; Jones v. Railway, 178 Mo. 528; Peterson v. Transit Co., 199 Mo. 331; Mockowik v. Railroad, 196 Mo. 550; Stump

v. Kopp, 201 Mo. 412; Berry v. Railroad, 214 Mo. 593; Mann v. Doerr, 222 Mo. 1; Hannon v. Transit Co., 102 Mo. App. 216; Woody v. Railroad, 104 Mo. App. 678; Railroad v. Railroad, 110 Mo. App. 300; Caplain v. Transit Co., 114 Mo. App. 256; Cross v. Gould, 131 Mo. App. 585.

GRAVES, C. J.,—*Certiorari* to the Kansas City Court of Appeals, bringing up the judgment and opinion of that court in the case of S. B. Brightwell (Plaintiff), Respondent, v. James W. Lusk et al., Receivers (Defendants), Appellants. Brightwell's action was one for personal injuries, and was brought under the Federal Employers' Liability Act. Defendants were the receivers of the St. Louis and San Francisco Railroad Company. Plaintiff was foreman of a crew repairing tracks in the switch yard of the said railway in Kansas City, Mo. Plaintiff and his crew of three men were working on what was known as the "Middle Yard Lead" in those switch yards. They had replaced a broken rail and were thereafter engaged in raising the joints and filling up the low places with cinders. Jacks were used to raise these joints and whilst the track was thus raised by the jacks it was not safe to run cars and engines over them. When a certain switch crew, with their engine and cars, attempted to pass over this track, plaintiff warned or signaled them, and they waited until the jacks were removed and then ran on over the rails where the plaintiff's crew was at work. The same thing occurred a second time, and when the switch crew started to pass over this track the third time, plaintiff says that the engineer was looking toward the back end of his train, and not toward the front end, and that he, in attempting to signal the engineer, left his track and going to one side thereof in order to give the signal of warning was struck by a car coming from the opposite direction on what was called the "East Yard Lead" track. He says these tracks (Middle Yard Lead, and East Yard Lead) were eight feet apart. Defendants' evidence makes them ten to fourteen feet apart. At

eight feet apart, there was a clear space of four feet between passing trains.

The petition charges as negligence (1) the failure of the engineer running on the "Middle Yard Lead" to keep a lookout for plaintiff's signals, and (2) the running of the car on the "East Yard Lead" "without having some person thereon, and in charge thereof, aforesaid, to warn persons of its approach, or to stop same before allowing it to collide with persons who happened to be on the track."

In the trial court the case was submitted to the jury on the negligence of the engineer only. The latter alleged negligent running of the car on the East Lead Track was eliminated.

The plaintiff had judgment for $5,000, and the Kansas City Court of Appeals affirmed this judgment, and our writ was directed to this judgment of affirmance. Other details can best be stated in the course of the opinion.

I. As stated, the Court of Appeals held that the negligence of the engineer was shown by the facts, and that such negligence was the proximate cause of the injury. The relators here contend that this holding contravenes our rule as announced in a line of cases of which Degonia v. Railroad Co., 224 Mo. 564; Cahill v. Railroad Co., 205 Mo. 393; Nivert v. Railroad Co., 232 Mo. 626; Rashall v. Railroad Co., 249 Mo. 509, and Gabal v. Railway Co., 251 Mo. 257, are samples. Recollecting that the question passed upon is the alleged negligence of the engineer in not looking forward for a signal from plaintiff, let us compare the ruling with the doctrine of our cases cited, supra. Those cases hold (1) that trackmen are under a duty to look out for their own safety; (2) that an engineer is not required to keep a lookout for trackmen in the ordinary operation of trains; (3) that the engineer has the right to assume that trackmen, although in a place of danger, will in the exercise of their duty to protect themselves remove themselves

*Duty of Engineer to Trackmen.*

from such place of danger, before the train reaches them, and (4) that it is only after the engineer discovers that the trackman is oblivious to his danger and is not going to retire to a safe place, that the engineer is obliged to take steps to protect such trackman.

It will be noted that these cases also fix the liability of the master for the negligence of the engineer on the ground that such engineer knows of the danger to which the trackman is exposed, and knows, or should know by the exercise of care, that the trackman is oblivious to the threatened danger. In the case at bar the facts do not justify the conclusion that this particular engineer was entitled to a clear track. He knew these men were doing this particular work, because he had twice run over this track and awaited the removal of the jacks. Whilst the question was properly raised by the trial court's refusal to give a peremptory instruction for defendant, yet if the injury to plaintiff had been caused by the negligence of the engineer, we cannot say that the ruling contravenes the cases cited. This engineer knew that he did not have a clear track. This, because he knew these men were placing jacks under the rail joints, and his track could not be clear. He might have had the right to expect his track to be clear of plaintiff and his crew, because it was their duty to be on the lookout, but he did not have the right to expect a clear running track, because of the knowledge he had of the work which was being done thereon. But the damage in this case was not occasioned by the running of the train over the track where plaintiff was working, nor where plaintiff was injured. The train was stopped before reaching the point where plaintiff and his crew were working. No injury was directly occasioned by the management of this train. This train did not collide with the plaintiff. As we gather the case, the serious contention is: that the failure of the engineer to be looking forward for a signal from the plaintiff, occasioned the plaintiff to move to one side of the track to give the signal, and that this move resulted in plaintiff's injury. The real question is, was the

alleged negligence the proximate cause of the injury? The Court of Appeals said it was, and this holding is charged to be violative of holdings of this court. This question we take next.

II. Before discussing the question of proximate cause it might be well to dispose of a minor contention. In relators' brief, under Point 1, it is said:

"The decision of the Court of Appeals, in holding that the relators owed plaintiff, a trackman, the duty to watch out for his safety upon **Trackmen on Another Track.** the tracks *and particularly upon the East Yard Lead,* is in conflict with all previous decisions of this court defining the duty owed by railroad companies to trackmen, and more particularly with the decision of this court in the cases" cited. (The italics are ours).

If the trial court or the Court of Appeals had undertaken to fix liability on the alleged negligent running of the car on the East Yard Lead, then there might be substance in this claim. Neither court undertook to so fix liability. The trial court did not submit such an issue, nor did the Court of Appeals undertake to pass thereon. In both courts the real issue was that the failure of the engineer to be upon the lookout for plaintiff's signal was the proximate cause of the injury. The rule in Degonia's case was not an issue in this case. It might have been had the second ground of negligence been urged, but it was not.

III. The real question in this case is whether or not the alleged negligence of the engineer **Proximate Cause.** was the proximate cause of the injury, and whether or not the ruling of the Court of Appeals contravenes the decisions of this court upon that question. The Court of Appeals in the opinion thus states the matter:

"The engine was running slowly, not over four or five miles per hour, and was stopped before it reached the track jacks. The petition alleged that the proxi-

mate cause of the injury was negligence of the engineer in approaching the track jacks without looking for a stop signal and negligence is running the car along the east track without having an operator thereon to give warning of its approach. In the instructions the court withdrew the latter charge from the jury and authorized a verdict for plaintiff only upon the hypothesis that the alleged negligence of the engineer was a proximate cause of the injury.''

It will be seen that the one single issue was before the Court of Appeals. As stated by the Court of Appeals the evidence is conflicting. For plaintiff it tends to show that the engineer was looking back at the ''drag'' of cars, and not toward the front of the moving train; that plaintiff was trying to signal him to stop the train, and in his efforts so to do, stepped across so near another track that he was knocked down and injured by a car which had been shunted down that track. Singular to note, that, although plaintiff's case proceeds on his inability to give the warning to the engineer, because he was looking backward, instead of forward, yet the engineer did stop his train before the danger point was reached. The Court of Appeals thus states the defendant's side of the controversy:

''The engineer testified that plaintiff was not trying to signal him, but seemed to be looking intently at the track work. He said: 'I tooted the whistle two or three times for him to get out of the way or step one way or the other and he stepped over, that is, he came there in front of this box car that was coming down towards the crossover, then I seen that he didn't see this car and so I hollered at him, the time was so short, and the car was so close from him that he did not seem to realize, did not seem to hear me, and did not look up at all, and the car hit him.' ''

That court, and we think rightfully, took the position that plaintiff's evidence alone should be considered in determining the facts against which a demurrer to the evidence had been lodged. Defendant was contending that its demurrer to the plaintiff's case should .

have been sustained, because such evidence did not show that the alleged negligent act was the proximate cause of the injury. In other words, that plaintiff had failed to make a case for the jury upon the first alleged ground of negligence.

Proximate cause is a broad term, and whether or not a given or stated act is the proximate cause of an injury may depend upon other and surrounding facts. In the case at bar the facts for plaintiff are few and simple. He in the exercise of his duty thought it necessary to signal the engineer. Owing to the fact that the engineer was not looking toward him, he stepped out to one side to give this signal, and in so doing got so close to another track that a moving car thereon (and rightly moving thereon so far as this case is concerned) struck and injured him. This states the whole case. The question then is, was the injury to plaintiff, in the manner in which it occurred, one reasonably to have been anticipated by the engineer? Stated differently, were the existing facts such that the engineer should have reasonably anticipated that his failure to look forward would result in the injury to plaintiff, in the manner in which such injury occurred. Under Gabal v. Railroad, 251 Mo. l. c. 268, and Degonia v. Railroad, 224 Mo. 564, and other similar cases, it was the duty of plaintiff to be on the lookout for moving trains or cars on the adjoining track. The engineer had the right to rely upon the fact that plaintiff would protect himself from injury from that source, no matter what duty he might have been performing for defendant. And this is an important fact in considering whether or not the engineer should have anticipated the injury to plaintiff, in failing to look forward.

If the injury was not one reasonably to have been anticipated as a sequence to the failure of the engineer, then such failure was not, in law, the proximate cause of the injury. This doctrine is announced in American Brewing Assn. v. Talbot, 141 Mo. l. c. 683, whereat we said:

"Numerous authorities hold that it is not negligence not to take precautionary measures to prevent an injury which, if taken, would have prevented it, when the injury could not reasonably have been anticipated and would not, unless under exceptional circumstances, have happened."

In the same case, 141 Mo. l. c. 684, we quote with approval the following from "Negligence of Imposed Duties" by Ray:.

"The proper inquiry is not whether the accident might have been avoided if the one charged with negligence had anticipated its occurrence, but whether, taking the circumstances as they then existed, he was negligent in failing to anticipate and provide against the occurrence."

So too, on the same page, and the one following, we quoted with approval from Webb's Pollock on Torts, the following:

"Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability. And the statement proposed, though not positively laid down, in Greenland v. Chaplin, 5 Ex. 248, namely, 'that a person is expected to anticipate and guard against all reasonable consequences, but that he is not, by the law of England, expected to anticipate and guard against that which no reasonable man would

'expect to occur,' appears to contain the only rule tenable on principle where the liability is founded solely on negligence. 'Mischief which could by no possibility have been foreseen, and which no reasonable person would have anticipated' may be the ground of legal compensation under some rule of exceptional severity, and such rules, for various reasons, exist; but under an ordinary rule of due care and caution it can not be taken into account.''

From it all, we take it, that the established rule of this court is that if the injury, as occasioned, was not one which could have reasonably been anticipated as a sequence of the alleged negligent act, then the alleged negligent act was not in law the proximate cause of the injury, and no recovery can be had therefor. It is this principle of law that the Court of Appeals has contravened in the case at bar. ''Grey Mule'' cases as to facts are not required. It is sufficient that on a given state of facts the holding of the appellate court contravenes well established rulings in law or equity as made by this court.

Conceding in the instant case that the engineer failed to look for a signal from plaintiff, yet it cannot be said that the engineer could have reasonably anticipated that the plaintiff would get over on or in close proximity to another track, and that a car or train thereon would strike and injure him. On the other hand he had the right to assume that plaintiff, so far as the other track was concerned, would protect himself. Under the facts the engineer could not reasonably anticipate that his failure to look forward would be followed by injury to plaintiff at the time and in the manner of its occurrence. The ruling of the Court of Appeals in holding that the act of the engineer was the proximate cause of this injury, is opposed to the general doctrine announced in American Brewing Association v. Talbot, supra, and other similar rulings of this court. It follows that the record and judgment of such court should be quashed, and it is so ordered. All concur, except *Bond, J.,* who dissents.